```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

TIFFANY R. BROSCH, as            )
Parent and Natural Guardian      )
of minors JWB and JB,            )
                                 )
    Plaintiffs,                  )
                                 )
vs.                              )    NO. 2:08-CV-152
                                 )
K-MART CORPORATION, *et al.*,    )
                                 )
    Defendants.                  )

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff's Motion to Strike the Affidavit of Lisa Jacobsen, filed on June 20, 2012; and (2) Plaintiff's Motion for Partial Summary Judgment, filed on February 1, 2012. For the reasons set forth below, these motions are **DENIED**.

BACKGROUND

On February 1, 2012, Plaintiff filed her motion for partial summary judgment, arguing that Defendants Kmart and Dorel are strictly liable for the defective kitchen island under Indiana's "domestic distributor" rule and that Kmart is also liable for negligence because it held itself out as the manufacturer of the kitchen island. On February 29, 2012, Defendants filed their

-1-

response in opposition to plaintiff's motion. In their response, Defendants relied on the Affidavit of Lisa Jacobsen to assist in raising a genuine issue of material fact as to who manufactured the kitchen island. On March 15, 2012, Plaintiff filed her reply. In addition, Plaintiff filed a motion to strike Lisa Jacobsen's affidavit.

DISCUSSION

Motion to Strike

Defendants have offered the affidavit of Lisa Jacobsen, a Kmart Buyer, in response to Plaintiff's motion for summary judgment. Attached to her affidavit is a purchase order for the kitchen island, which reflects Zhi Jia Furniture Company, Ltd. as the manufacturer. Plaintiff challenges the admissibility of the purchase order for two separate reasons. First, Plaintiff submits that the affidavit is insufficient to establish the authenticity of the purchase orders referenced. Second, Plaintiff claims that the affidavit and purchase order conflict with Ms. Jacobsen's prior testimony. These arguments will be addressed in turn.

> Plaintiff has failed to establish
> that Lisa Jacobsen's Affidavit is insufficient
> <u>to establish the authenticity of the purchase orders.</u>

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Plaintiff argues that Lisa Jacobsen's affidavit in opposition to the motion for summary judgment does not meet the requirements of Rule 56(c)(4) because it is inadmissable hearsay.

Pursuant to Rule 803(6), documents prepared in the normal course of business are excluded by the hearsay rule and are admissible. "A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of a regularly conducted business activity, and that it was the regular practice of that business to make such records." *United States v. Given*, 164 F.3d 389, 394 (7th Cir. 1999). Plaintiff argues that the requirements for Rule 803(6) have not been met.

To start, Plaintiff argues that Lisa Jacobsen is not a "qualified witness" to provide testimony about the purchase order "because the purchase order was generated by another Kmart employee in Hong Kong." (Pl. Motion, p. 6). Despite Plaintiff's argument, "Rule 803(6) does not require that the qualified witness be the person who prepared the record, or that the witness have personal knowledge of the entries in the records." *Collins v. Kibort*, 143 F.3d 331, 337-338 (7th Cir. 1998). Rule 803(6) requires "that the witness have knowledge of the procedure under which the records

were created." *Id.* Based upon the deposition excerpts and affidavit itself, it is appears that Lisa Jacobsen has knowledge of the procedures under which the purchase order was created, that the purchase order was kept in the ordinary course of business, and that it was regular practice to make such purchase orders. Accordingly, at this stage, the motion to strike the purchase order as hearsay is denied as it appears admissible under Rule 803(6) of the Federal Rules of Evidence.

> Lisa Jacobsen's affidavit is
> <u>not inconsistent with her prior testimony.</u>

In her 2008 deposition, Lisa Jacobsen testified that it was her "understanding of the process [] that Dorel designed this [kitchen island] and then they had Chensheng [Furniture Company Limited], their manufacturing company in China, manufacture it for them. . .." (Jacobsen Dep. p. 107). However, in paragraph 10 of her recently filed affidavit, Lisa Jacobsen states that the purchase order marked as Exhibit A to the affidavit reflects the factory name of Zhi Jia Furniture Co., Ltd. as being where the kitchen island at issue in this litigation was manufactured.

Plaintiff argues that Lisa Jacobsen's affidavit is inconsistent with her previous deposition testimony and, therefore, is insufficient to create a genuine issue of material fact as to whether another entity other than Chensheng manufactured the kitchen island.

"[I]t is well established that a party cannot create a genuine issue of material fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior depositions or otherwise sworn testimony." *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir. 1987).  However, Lisa Jacobsen's affidavit does not contain conclusory allegations that contradict her admissions in a prior testimony.

In her 2008 deposition, Lisa Jacobsen testified about two purchase orders in front of her; however, she intimated that there may be more purchase orders for the kitchen island. (Jacobsen dep. p. 131).  Her current affidavit provides another purchase order that she did not have during her deposition.  Jacobsen now states that the purchase order, which she did not have at her deposition, identified as Exhibit A to her affidavit, lists the factory name of Zhi Jia Furniture Co., Ltd. as being where the kitchen island was manufactured.  This statement is not a mere conclusory allegation; it is based upon the purchase order.

Moreover, the statement in the affidavit does not conflict with her prior sworn testimony.  Notably, Ms. Jacobsen did not testify about that purchase order during her deposition.  In fact, it appears as though she did not know about its existence at the time she was deposed.  Jacobsen's statement about what the purchase order reflects does not contradict her prior testimony regarding her understanding of the design and manufacturing process of the

kitchen island. These are two related, yet separate issues of fact.

Motion for Summary Judgment

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but

"must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts[1]

The parties' given facts center around the identity of the

---

[1] Noticeably absent from Plaintiff's supporting brief is a section labeled "Statement of Material Facts," as required by Local Rule 56-1, formerly titled 56.1.

manufacturer who built the kitchen island that is the subject of this litigation, Model DAKM1670.

Dorel Asia SRL is a Barbados corporation with offices in Canada. (Dorel Ans. to Int. #1; Carter Dep. pp. 39-40). Dorel Asia SRL was the distributor and designer of the kitchen island. (Jacobsen Dep. p. 107). Dorel Asia used Jardine Enterprises, Ltd., a Belize corporation with offices in Taiwan, to act as a sourcing agent. As a sourcing agent, Jardine would find factories to use for the production of the kitchen island and oversee the production and communicate with the manufacturer. (Gisondi Dep. p. 16). Dorel Asia sent a third party sales representative, Cathy Carter, to Kmart to present the kitchen island to Kmart for sale. (Carter Dep. p. 8; Jacobsen Dep. p. 42).

Once Kmart decided to purchase the island, it sent that information to its overseas office in Hong Kong to set the item up in Kmart's computer system and create a purchase order. (Jacobsen Dep. p. 107, 109). The purchase order is created from the Hong Kong Kmart office, which starts pre-production testing and gets a sample of the product. (Jacobsen Aff. pp. 110, 113). Dorel Asia ordered this type of kitchen island for Kmart from June 2006 to March 2007. (Gisondi Dep. p. 17).

In his deposition, Silvio Gisondi, Manager of Quality Assurance at Dorel, stated that Chensheng Furniture Company manufactured the kitchen island. (Gisondi Dep. p. 11). However,

Gisondi also acknowledged that some of Kmart's internal documents list Zhi Jia as the manufacturer of the kitchen island. (Gisondi Dep. p. 43). Gisondi knows that the two names - Chengsheng Furniture and Zhi Jia - are used interchangeably; however, he does not know the reason why or the business structure of either company. (Gisondi Dep. p. 43). Jardine Enterprises, Ltd., also identified Chensheng as the manufacturer of the kitchen island. (Jardine Ans. To Int. #4).

In discovery, Kmart produced four purchase orders identifying Zhi Jia as the manufacturer of the kitchen island. (Jacobsen Aff. Exs. A-D). The four purchase orders are dated April 28, 2006, June 16, 2006, August 8, 2006 and August 25, 2006. The purchase orders show Kmart purchasing many units of the kitchen islands from Dorel Asia that were manufactured by Zhi Jia. In her 2008 deposition, Lisa Jacobsen testified that it was her "understanding of the process [] that Dorel designed this [kitchen island] and then they had Chensheng [Furniture Company Limited], their manufacturing company in China, manufacture it for them. . .." (Jacobsen Dep. p. 107). However, Lisa Jacobsen has concluded that the April 28, 2006, purchase order is the purchase order for the kitchen island that resulted in the shipment and receipt of the Essential Home Kitchen Island to the Kmart Corporation's Griffith, Indiana, store on or before August 11, 2006. Additionally, Dorel Asia identified "Chensheng Furniture Co. Ltd./Dong Guan Zhi Jia Wooden Industry,

Co. Ltd." as the manufacturer. (Dorel. Ans. to Int. #4). Kmart also identified Zhi Jia Furntiture Co. Ltd. as the manufacturer. (Kmart Ans. to Int. #4).

Plaintiff hired APS international to translate the summons and complaint into Chinese and to have them properly served upon Chensheng Furniture. APS served the documents upon the Ministry of Justice of the People's Republic of China and, on May 27, 2011, the Ministry of Justice responded that the documents could not be served because the company's business registration had been cancelled. (Pl. Ex. 7).

Plaintiff named Zhi Jia Furniture Co., Ltd. as a potential manufacturer of the kitchen island and Plaintiff served Zhi Jia, but no answer was ever filed and Zhi Jia has not otherwise pled. (DE# 123). An entity named Dong Guan Zhi Jia Wooden Industry Co., Ltd. ("Dong Guan") was not named as a party and was not served; however, Dong Guan did file a letter denying they manufactured the kitchen island. (DE# 122).

Domestic Distributor Rule

"Indiana's Products Liability Act governs all actions brought by a user or consumer against a manufacturer or seller for the physical harm caused by a product." *Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 779 (Ind. 2004). Typically, "[a]ctions for strict liability in tort are restricted to manufacturers of defective

products." *Id.* at 880. However, "[i]f a court is unable to hold jurisdiction over a particular manufacturer of a product . . . alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered . . . the manufacturer of the product." Ind. Code § 34-20-2-4. This is commonly referred to as the "domestic distributor" rule. *Kennedy*, 806 N.E.2d at 781. The purpose of this rule is to "provide a remedy for Indiana consumers who are injured by defective products manufactured by an overseas entity over which Indiana courts have no jurisdiction." *Id.* at 782.

The domestic distributor rule can be invoked if two conditions are met. First, Dorel and Kmart must be the kitchen island's principal distributor or seller over whom this Court can hold jurisdiction; and second, this Court must be unable to hold jurisdiction over the actual manufacturer. The parties' dispute centers around the second prong; the identity of the actual manufacturer of the kitchen island and whether the court is unable to hold jurisdiction over that manufacturer.

There is a question of fact as to the identity of the actual manufacturer of the kitchen island. Some evidence points to Chensheng, while other evidence points to Zhi Jia, as the manufacturer of the alleged defective kitchen island. To add to the uncertainty, there is also evidence that the names Chensheng and Zhi Jia are used interchangeably; however, it is unknown why

the names have been used interchangeably. It may be that the companies are alter egos of one another or that they be otherwise related. The problem is that this Court has not been given any undisputed evidence to determine what relationship, if any, there is between Chengsheng and Zhi Jia.

Knowing whether Chensheng or Zhi Jia manufactured the kitchen island is essential in determining whether Kmart and Dorel could be held strictly liable for harm caused by the kitchen island. Zhi Jia was named as a potential manufacturer and was served accordingly. However, Zhi Jia has not answered or otherwise pled.[2] Plaintiffs assert that "there is no evidence the Court may hold jurisdiction over [Zhi Jia] even if it did receive the copy of summons and complaint." (DE# 147, p. 10). Plaintiff then details the sale of the kitchen island from China and, without any supporting legal authority, concludes that Zhi Jia does not have sufficient minimum contacts with Indiana to be hailed into Court here. However, Plaintiff's argument is based, in large part, on speculation at this point. Whether Zhi Jia could be held under the jurisdiction of this Court is a genuine issue of material fact.

At this stage, this Court cannot conclude as a matter of law whether Chengsheng or Zhi Jia manufactured the kitchen island or whether this Court could hold jurisdiction over Zhi Jia. As such,

---

[2] It is unclear whether Dong Guan Zhi Jia Wooden Industry, Co., Ltd, - the company that was not named as a party, but filed a letter denying it manufactured the kitchen island- is the same entity as Zhi Jia.

Plaintiff has not satisfied her burden of proof to establish that the domestic distributor rule applies at trial as a matter of law.

Apparent Manufacturer

Section 400 of the Restatement (Second) of Torts provides, "[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer. *Kennedy*, 806 N.E.2d at 784(citing Restatement (Second) of Torts § 400 (1965)). The "apparent manufacturer" rule has been used to "hold a vendor liable for the negligence of the manufacturer where the vendor placed its name on the product and gave no indication of who was the actual manufacturer." *Id.*(citing *Dudley Sports Co. v. Schmitt*, 279 N.E.2d 266, 273 (Ind. App. Ct. 1972)). The Indiana Court of Appeals reasoned that:

> When a vendor puts his name exclusively on a product, in no way indicating that it is the product of another, the public is induced to believe that the vendor was the manufacturer of the product. This belief causes the public to rely upon the skill of the vendor. When products are held out in this manner the ultimate purchaser has no available means of ascertaining who is the true manufacturer. By this act of concealment, the vendor vouches for the product and assumes the manufacturer's responsibility as his own.

*Dudley*, 279 N.E.2d at 273.

Plaintiff argues that Kmart should be held out to be the "apparent manufacturer" because Kmart held out the kitchen island as its own product by making the label read "Made in China for Kmart," and because Kmart had extensive involvement with the

kitchen island from the design through the distribution process. Both parties cite to *Mello v. K-Mart Corp.*, 604 F.Supp. 769 (D.C. Ma. 1985), in support of their positions.

In *Mello*, the plaintiffs purchased a hydraulic jack from K-Mart and were injured while using it to repair an automobile. Plaintiffs sued K-Mart and argued that K-mart should be liable to the same extent as the manufacturer of the jack because K-mart represented itself to be the product's manufacturer. In support of this argument, plaintiffs presented evidence:

> showing that the name "K-Mart" printed in bold letters on both the jack and the contained in which it was packaged. On the container appear the words: "Manufactured in Taiwan Republic of China for K Mart Corporation."

Id. at 773.

The court reasoned that, in determining whether the apparent manufacturer rule applies, "[t]he crucial factor determining a retailer's amenability to suit on a theory of negligence is whether the labeling on a particular product is likely to cause a consumer to rely on the retailer's reputation as an assurance of the product's quality." Id. The court relied on the Restatement (Second) of Torts section 400, which explained:

> The mere fact that the goods are marked with additional words as "made for" the seller, or describe him as the distributor, particularly in the absence of a clear and distinctive designation of the real manufacturer or packer, is not sufficient to make inapplicable the rule stated in this Section. The casual reader of a label is likely to rely upon the featured name, tradename, or trademark, and overlook the qualification of the description of source.

Restatement (Second) of Torts § 400 (1965).

Applying these principles, the court found that "there clearly exists a question of fact as to whether the words appearing on the jack and its container would convey the impression that the device was manufactured either by K-Mart or especially for K-Mart by another company." *Mello*, 604 F.Supp. at 774.

Kmart's label here was substantially similar to the label in *Mello*. Finding the reasoning in *Mello* persuasive, this Court holds that the conclusion reached in *Mello* is the same conclusion to reach here. Accordingly, there exists a question of fact as to whether the words appearing on the kitchen island container would convey to a consumer the impression that the kitchen island by K-Mart or especially for K-Mart by another manufacturer.

Plaintiff attempts to avoid this conclusion by distinguishing the present situation from *Mello*. Without any citations to supporting legal authority, Plaintiff argues that because "Kmart controlled the labeling and packaging of the kitchen island cart," Kmart was holding itself out as the apparent manufacturer as a matter of law. Plaintiff's attempt to distinguish our case from *Mello* is unavailing. "Whether a 'holding out' has occurred should be judged from the viewpoint of the purchasing public, examining whether the public has been induced to believe that the vendor was the actual manufacturer of the product." *Kennedy*, 806 N.E.2d at

784(citing *Hebel v. Sherman Equipment,* 442 N.E.2d 199 (Ill. 1982)). Thus, the main question that needs to be answered is not who controlled the words that appeared on the container.  Instead, it is whether the words appearing on the kitchen island container would convey to a consumer the impression that the kitchen island was manufactured by K-Mart or especially for K-Mart by another manufacturer.  There remains a genuine issue of material fact as to that question.

CONCLUSION

For the reasons set forth above, Plaintiff's motion to strike and motion for summary judgment are both **DENIED**.

DATED:  September 10, 2012          /s/RUDY LOZANO, Judge
                                    **United States District Court**